# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

|  |  |  |
|---|---|---|
| SHELLEY GOODALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-cv-03228 |
| | ) | |
| CHRYSLER, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) or, Alternatively, to Transfer Venue Pursuant to 28 U.S.C. § 1412 (d/e 12).  For the following reasons, Defendant's Motion is DENIED IN PART and GRANTED IN PART.  Defendant's Motion to Dismiss is DENIED.  Defendant's Motion to Transfer Venue is GRANTED.

## I. BACKGROUND

On August 11, 2016, Plaintiff Shelley Goodall filed the

Complaint in this case (d/e 1) against Defendant FCA US LLC[1] for personal injury.  On October 11, 2016, Defendant filed a Motion to Dismiss Pursuant to Rule 12(b)(6) or, Alternatively, to Transfer Venue Pursuant to 28 U.S.C. § 1412 (d/e [12]) (hereinafter Motion to Dismiss or Transfer).  Defendant moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's claim is barred by the applicable statute of limitations.  Defendant alternatively seeks to transfer this matter to the United States District Court for the Southern District of New York, for referral to the Bankruptcy Court in that District.  On October 27, 2016, Plaintiff filed a document that the Court considers to be Plaintiff's Response to the Motion to Dismiss or Transfer.  (d/e [13]).  On November 14, 2016 (d/e [16]), and December 27, 2016 (d/e [17]), Plaintiff made filings with supplemental exhibits.  The Court presumes that these filings amend Plaintiff's Response to the Motion to Dismiss or Transfer, as both seem to reference the Motion to Dismiss or Transfer.  (d/e [16] (stating it is "responding to the

---

[1] The Complaint names "Chrysler, Inc." as the defendant.  However, in its Motion to Dismiss or Transfer, Defendant clarifies that its name is FCA US LLC, formerly known as Chrysler Group LLC.  Defendant also asserts that Chrysler LLC is a bankrupt entity.

defendants [sic] response and their plea for a dismissal . . . .")) (d/e [17] (filing supplemental information on talc powder, which Defendant stated was in the airbag in its Motion to Dismiss or Transfer)). On March 23, 2017, Defendant filed, with leave of this Court, its Reply to Plaintiff's Response (d/e [22]). On April 4, 2017, Plaintiff filed what the Court considers to be a surreply to Defendant's Reply (d/e [24]). Although Plaintiff did not seek leave of the Court to file her surreply as required, the Court ALLOWS Plaintiff's surreply.

The following information is taken from the allegations in and the exhibits attached to the Complaint, which the Court must accept as true when ruling on a motion to dismiss. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

On January 1, 2009, Plaintiff was involved in a motor vehicle accident in which the side of her vehicle was struck by another vehicle. A letter from Chrysler to Plaintiff[2] attached to the Complaint indicates that Plaintiff's vehicle involved in the accident was a 1996 Chrysler Sebring. Plaintiff's airbag tore open and

---

[2] Plaintiff attached to the Complaint two letters from Chrysler that are addressed to "Shelly Burg," which the Court presumes to be the same person as Plaintiff. Compl. at 8–9.

sprayed her with chemicals, which caused burns on her face, neck, chest, and scalp, damage to her airways, glaucoma in both eyes, spots on the left side of her brain which caused a "mini stroke," blood pressure problems, rashing, and scarring.

Plaintiff requested Defendant to provide her with "the MSDS sheet," which is seemingly a reference to a Material Safety Data Sheet (MSDS) for the airbag at issue. Plaintiff received an MSDS for the Mopar Airbag Inflator Module Assy-Driver Air Bag (Mar. 29, 2005) in 2016. See Third Attachment to the Complaint (d/e [1]) at 10.

Plaintiff claims that if she had the MSDS at the time of the accident, the doctors treating her injuries may have been able to provide better care.

Plaintiff seeks compensatory damages for bodily harm, emotional harm, pain and suffering, loss of income, loss of enjoyment of life, and property damage. Plaintiff also seeks punitive damages.

## II.  JURISDICTION

This Court has subject matter jurisdiction based on the diversity of the parties and because the amount in controversy

exceeds $75,000.  <u>See</u> 28 U.S.C. § 1332(a)(1).  Plaintiff is a citizen of Illinois, while Defendant is a citizen of Michigan.  <u>See</u> Compl. at 1. In addition, the amount in controversy exceeds $75,000 exclusive of interest and costs because the Plaintiff seeks $1,000,000,000 in compensatory damages.  Compl. at 7.

### III. MOTION TO DISMISS

### A.  LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in the plaintiff's favor.  <u>Tamayo</u>, 526 F.3d at 1081 (7th Cir. 2008).  However, the complaint must set forth facts that plausibly demonstrate a claim for relief.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").  Plausibility means alleging factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct.  <u>Id.</u>

A court addressing a motion to dismiss may consider certain documents in addition to the complaint.  First, the court may

consider any exhibits attached to the Complaint.  See Fed. R. Civ.

Pro. 10(c) ("A copy of a written instrument that is an exhibit to a

pleading is a part of the pleading for all purposes."); Moranski v.

General Motors Corp., 433 F.3d 537, 539 (7th Cir. 2005) ("Any

written instrument attached to the complaint is considered part of

the complaint."); Beam v. IPCO Corp., 838 F.2d 242, 244 (7th Cir.

1988) (exhibits attached to the complaint are incorporated into the

pleading for purpose of Rule 12(b) motion).

Second, the court may consider the plaintiff's response to a

motion to dismiss and other statements and materials that are

referenced in the complaint and that are essential to the plaintiff's

claims.  Heng v. Heavner, Beyers & Mihlar, LLC, 849 F.3d 348, 353-

54 (7th Cir. 2017) (finding that a court may, when ruling on a

motion to dismiss, consider materials or elaborations in a plaintiff's

trial brief or response to a motion to dismiss consistent with the

pleadings); Gutierrez v. Peters, 111 F.3d 1364, 1367 n.1 (7th Cir.

1997) (finding that a court may consider facts submitted in a pro se

plaintiff's brief opposing a motion to dismiss when the facts are

consistent with the allegations in the complaint).  A plaintiff

opposing a Rule 12(b)(6) motion to dismiss "may submit materials

outside the pleadings to illustrate the facts the party expects to be able to prove." Geinosky v. City of Chi., 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Finally, the court may consider information that is subject to judicial notice. Ennenga v. Starns, 677 F.3d 766, 773-74 (7th Cir. 2012) (a court may take judicial notice of matters within the public record that are not subject to reasonable dispute without converting a pending motion into a motion for summary judgment.

In deciding on the Motion to Dismiss or Transfer, the Court will consider the exhibits to the Complaint—the two letters from Chrysler to Plaintiff and the MSDS. The Court will also consider Plaintiff's statements in her Response to the Motion to Dismiss or Transfer that are consistent with the Complaint.

The Court will not consider Plaintiff's numerous other filings and their exhibits (d/e [16] and [17]). Plaintiff attached to d/e [16] numerous articles and scientific resources on sodium azide, potassium nitrate, and the dangers of airbag chemicals to human health. Plaintiff also attached a customer service summary for a leather cleaner service, and a workers compensation accident report. None of these materials are referenced in the Complaint,

nor are they essential to Plaintiff's claims.  The Court accordingly will not consider these documents.  Plaintiff also attached several photographs of what the Court presumes to be the vehicle at issue and Plaintiff after the accident.  While the accident and the ensuing harm to Plaintiff are the subject of the Complaint, the photographs are extraneous to Plaintiff's claims.  The Court will not consider them at this stage.

Plaintiff also attached various medical records and the accident report to d/e [16].  The accident report contains facts that Plaintiff will need to prove in order to prevail on her claims.  The medical records substantiate Plaintiff's descriptions of her injuries and her prayers for damages.  The Court will accordingly consider the accident report and the medical records attached to d/e [16].

## B.  ANALYSIS

1. <u>The present action is governed by the Illinois statute of limitations for personal injury claims.</u>

Although the Complaint does not state the particular cause of action under which Plaintiff asserts Defendant's liability, Plaintiff claims that Defendant is liable to her for the personal injuries she sustained from chemicals that sprayed onto her from her airbag.

The Court must therefore apply state law regarding the statute of limitations for personal injury claims, including corresponding tolling rules.  <u>Jenkins v. Village of Maywood</u>, 506 F.3d 622, 623-24 (7th Cir. 2007) ("Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law. . . . Federal courts using state limitations periods thus apply the state's coordinate tolling rules as well.") (internal quotation marks omitted).  Therefore, Plaintiff's claims are limited by Illinois' two-year statute of limitations for personal injury claims.  <u>See</u> 735 ILCS § 5/13-202 (2016) ("Actions for damages for an injury to the person . . . shall be commenced within 2 years next after the cause of action accrued . . . .").

The Complaint alleges Defendant is liable for injuries Plaintiff sustained from a motor vehicle accident that occurred on January 1, 2009.  The Complaint, filed on August 11, 2016, was therefore filed approximately seven-and-a-half years after the accident.  The expiration of the applicable statute of limitations is an affirmative defense.  <u>Chi. Bldg. Design, P.C. v. Mongolian House, Inc.</u>, 770 F.3d 610, 613 (7th Cir. 2014).  Although a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative

defenses, dismissal is appropriate where the complaint sets out sufficient facts to establish the statute of limitations affirmative defense.  <u>United States v. Lewis</u>, 411 F.3d 838, 842 (7th Cir. 2005) (Rule 12(b)(6) dismissal appropriate where complaint "plainly reveals that an action is untimely under the governing statute of limitations."); <u>see also</u> <u>Brooks v. Ross</u>, 578 F.3d 574, 579 (7th Cir. 2009) (several of plaintiff's claims were properly dismissed at 12(b)(6) stage as time-barred by the statute of limitations because the relevant dates were set forth unambiguously in the complaint).

Because the Complaint establishes that it was filed five-and-a-half years after the two-year anniversary of the accident giving rise to this case, dismissal is appropriate unless a tolling doctrine applies.  <u>Indep. Trust Corp. v. Stewart Info. Servs. Corp.</u>, 665 F.3d 930, 935 (7th Cir. 2012) (when ruling on a 12(b)(6) motion to dismiss based on the statute of limitations defense, the court shall consider "any rules that are an integral part of the statute of limitations, such as tolling and equitable estoppel").

2. <u>The discovery rule does not prevent expiration of the statute of limitations prior to the date on which Plaintiff filed the Complaint.</u>

Under Illinois law, the statute of limitations is subject to the

discovery rule, which tolls the running of the clock until the plaintiff knows or reasonably should know of her injury and knows or reasonably should know that her injury was wrongfully caused. Mitsias v. I-Flow Corp., 959 N.E.2d 94, 100 (Ill. App. Ct. 2011). "[T]he statute of limitations begins to run as soon as she has sufficient information about her injury and its cause to spark inquiry in a reasonable person as to whether the conduct of the party who caused her injury might be legally actionable." Id. at 101.

### i. Plaintiff was aware of her injuries in 2009.

The Complaint establishes that Plaintiff was aware of injuries around the time of the accident in 2009. The Complaint states that Plaintiff's airbag tore open and sprayed her with chemicals. The Complaint lists several immediately-occurring injuries, including second degree burns to her face, chest, neck, and scalp. Compl. at 6. The Complaint also states that Plaintiff has been "ill since being exposed" to the chemicals in the airbag. Id. The Complaint also indicates that Plaintiff received medical treatment at the time of the accident, stating that if Plaintiff had the MSDS at the time of the accident, her doctors could possibly have administered better

treatment.  Id.  While certain of the alleged injuries reasonably could have been unknown to Plaintiff for a period of time following the accident, Plaintiff could not reasonably have been unaware of the second degree burns to her face, chest, neck, and scalp. Further, the letter from Chrysler dated January 12, 2009, acknowledges Plaintiff's injuries, including the burns Plaintiff sustained by the force of the deploying airbag.  The Complaint therefore establishes that Plaintiff had knowledge of her injuries in 2009.

> *ii. Plaintiff need not have been aware of the extent or severity of her injuries at the time of the accident to prevent the tolling of the statute of limitations.*

In her response to Defendant's Motion to Dismiss or Transfer, Plaintiff states she "did not know of the severity [presumably, of her injuries] until it was confirmed" by a lung specialist (Plaintiff does not indicate when this occurred).  Pl.'s Resp. at 1 (d/e 13).  Plaintiff also did not suffer her "mini stroke" until 2016 and her illness seems to be getting worse.  Compl. At 6.  However, ignorance of the severity or extent of the harm does not toll the statute of limitations when Plaintiff knew of at least some injury giving rise to a cause of action.  Clay v. Kuhl, 727 N.E.2d 217, 222 (Ill. 2000) ("There is no

requirement that a plaintiff must know the full extent of his or her injuries before suit must be brought under the applicable statute of limitations.").  Full knowledge of the nature of the injuries is not the type of knowledge contemplated by the discovery rule.  <u>See</u> <u>id.</u> at 221 (statute of limitations not tolled by plaintiff's discovery two years after alleged sexual abuse of resultant psychological problems).

Therefore, Plaintiff's later learning about other injuries, such as her "mini stroke" in 2016 and her worsening illness, Compl. at 6, and the severity of her injuries does not toll the statute of limitations.  The statute began to run at the time that she knew of injury sufficient to assert her claim, such as the second degree burns to her face, chest, neck, and scalp, which the Complaint establishes that Plaintiff knew about at the time of the accident.

> *iii. Plaintiff was aware in 2009 that her injuries were wrongfully caused.*

In addition to the discovery rule's requirement that the plaintiff know or reasonably should know about her injuries, the statute of limitations also does not begin to run until the plaintiff has sufficient information to reasonably inquire as to the wrongful

cause of her injuries.  <u>Mitsias</u>, 959 N.E.2d at 101 ("As for the

element of wrongfulness, an injured plaintiff should reasonably

know that her injury is wrongfully caused.").  Plaintiff need only

have general knowledge of wrongfulness.  <u>Mitsias</u>, 959 N.E.2d at

101–05.  ("[A] plaintiff's duty of inquiry begins well before she can

be certain that defendant's conduct satisfies all elements of a

particular cause of action, as long as she is aware that her injury

might have been 'wrongfully caused' in a general, non-technical

sense.").

The Complaint contains sufficient facts to establish that

Plaintiff was aware in 2009 that her injuries were wrongfully

caused.  The January 12, 2009, letter from Chrysler to Plaintiff

regards the "concerns that you have with the above referenced

vehicle."  The letter explicitly addresses the existence of chemicals

in the airbag and Plaintiff's injuries.  Chrysler also said that it

conducted an investigation into the incident and inspected the

vehicle.  The letter, signed by the "Customer Claims Resolution

Group" in the Office of the General Counsel, states "we are sorry to

hear of your injuries and sincerely hope that you are well on the

road to recovery."  <u>Id.</u> at 9.  The letter indicates that Plaintiff

contacted Chrysler about these concerns prior to the date of the letter, January 12, 2009. The letter establishes that Plaintiff's inquiry into the cause of her injuries began before January 12, 2009.

Additionally, Plaintiff asked Chrysler for the MSDS just after the accident. See Compl. at 5 ("Never would give me the MSDS sheet I asked for at the time of the wreck.").

The Complaint thus indicates that a reasonable inquiry as to wrongfulness was sparked in Plaintiff in 2009. Her actions just after the accident cannot reasonably be said to be consistent with unawareness of the wrongful cause of her injuries.

Statutes of limitations are intended to prevent plaintiffs from sitting on their rights. Nolan v. Johns-Manville Asbestos, 421 N.E.2d 864, 868 (Ill. 1981). Knowing of some injuries and having sufficient information to raise a reasonable question of wrongfulness, Plaintiff had a duty to reasonably inquire from sources other than Defendant into the cause of her injuries. See United States v. Kubrick, 444 U.S. 111, 122 (1979) (statute of limitations began to run when plaintiff was aware that the probable cause of his hearing loss was an antibiotic he received at the

hospital, two years before a physician informed him that the antibiotic should not have been administered, because plaintiff could have inquired about standard of care from other physicians); Hoffman v. Orthopedic Sys., Inc., 765 N.E.2d 116, 122 (Ill. App. Ct. 2002) (statute of limitations began to run against plaintiff harmed during surgery when plaintiff asked attorney to investigate any potential medical malpractice claim such that her product liability claim was time-barred three years later when she returned to hospital for unrelated matter and hospital staff stated that injury had been caused by surgical platform used during her surgery because she did not attempt more thorough inquiry into the cause of her injuries and she would have discovered products liability claim within limitations period if she had attempted to obtain results of hospital's investigation of incident).

The discovery rule does not shield a plaintiff who knows of her injuries and knows who caused the injury and does not reasonably investigate beyond inquiries to the wrongdoer. Id. The Court in Kubrick explained:

> "We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should

receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. *There are others who can tell him if he has been wronged, and he need only ask.* If he does ask and if the defendant has failed to live up to minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff." Id. at 122 (emphasis added).

Although Defendant did not provide Plaintiff with the MSDS until 2016, Plaintiff could have discovered the standard for safety, composition, and durability of airbags within the statutory period through reasonable diligence. Mitsias, 959 N.E.2d at 103 ("[T]he need for plaintiffs to investigate their potential claims with reasonable diligence has likewise shaped the development of the discovery rule in Illinois."). A quick search of public materials reveals several articles published during the statutory period in this case that discuss airbag components and their potential toxicity. See, e.g. OSHA Hazard Information Bulletin, Automobile Air Bag Safety (Aug. 30, 1990); SciJourner, The Hidden Hazards of Airbags (June 22, 2010); Rudnitsky Law Firm, Airbag Chemicals Cause Breathing Problems (May 29, 2009). The Court finds that

reasonable diligence would have made Plaintiff aware of the
potential wrongful cause of her injury before expiration of the
statute of limitations.

Because Plaintiff knew or reasonably should have known of at
least some of her injuries and of their wrongful cause around the
time of the accident in 2009, the statute of limitations was not
tolled by the discovery rule.

3. <u>Defendant is equitably estopped from asserting the
   expiration of the statute of limitations as a defense at this
   stage in the proceedings.</u>

Although the discovery rule did not toll the statute of
limitations period, Plaintiff has alleged sufficient facts at this stage
of the proceedings to find that the doctrines of equitable estoppel
and fraudulent concealment apply.  Therefore, Defendant is
prohibited from asserting the statute of limitations defense as a
ground for dismissal for failure to state a claim for relief.

Under Illinois law, a plaintiff may file her claim within five
years of discovery of her cause of action if the defendant
fraudulently concealed the cause of action from her.  735 ILCS
5/13-215.  To establish fraudulent concealment, the plaintiff must
prove that the defendant intentionally took active steps to prevent

or delay the plaintiff from bringing a timely lawsuit and that the fraud prevented her discovery of the cause of action. <u>Clay</u>, 727 N.E.2d at 223.

Allegations in the Complaint that Defendant refused to give Plaintiff the MSDS until 2016 and that Defendant lied to Plaintiff about the danger of chemicals in the airbag do not amount to fraudulent concealment. Plaintiff has not asserted that Defendant intentionally withheld the MSDS. Nor has Plaintiff asserted that Defendant intended to deceive Plaintiff as to the airbag's components to delay her pursuit of this action. With no allegation that any of Defendant's conduct was fraudulent or intentional, Plaintiff has not established fraudulent concealment.

Overlapping somewhat with the doctrine of fraudulent concealment, equitable estoppel prevents a defendant from asserting a statute of limitations defense if the plaintiff missed the statutory deadline to file her claim due to some other deliberate or blameworthy conduct by the defendant. <u>Shropshear v. Corp. Counsel of City of Chi.</u>, 275 F.3d 593, 597 (7th Cir. 2001). The doctrine of equitable estoppel exists under Illinois and federal law. <u>See</u> <u>id.</u> at 598; <u>Clay</u>, 727 N.E.2d at 223 (child abuser's selection of

victims who would remain silent and leading them to believe his behavior was acceptable did not equitably toll statute of limitations for personal injury claim by victim). A federal court applies the federal doctrine of equitable estoppel when determining whether the applicable state statute of limitations has run. See Shropshear, 275 F.3d at 598. Under federal case law, equitable estoppel applies if the defendant intentionally misled the plaintiff or if the plaintiff reasonably relied on the defendant's representations in forbearing suit. Bomba v. W.L. Belvidere, Inc., 579 F.2d 1067, 1070-71 (7th Cir. 1978). Examples include promises to the plaintiff that the defendant will not plead the statute of limitations pending settlement discussions and hiding or destroying evidence that the plaintiff needs to determine whether she has a claim. Cancer Found., Inc. v. Cerberus Capital Mgmt., LP, 559 F.3d 671, 676 (7th Cir. 2009).

To benefit from the doctrine of equitable estoppel, the plaintiff must allege sufficient facts to indicate that the defendant's actions or statements give rise to the doctrine. Theriot v. Captain James Sprinkle, Inc., 30 F.3d 136 (7th Cir. 1994) (unpublished) ("A plaintiff seeking to rely on estoppel bears the burden of

demonstrating that he was actually misled. Thus, when the running of the statute of limitations is clear, it is incumbent upon the plaintiff to allege sufficient facts which illustrate that the conduct or representations of the defendant would give rise to estoppel. To prevail in this case, [the plaintiff] must establish that the circumstances surrounding the taking of the release somehow induced or lulled him into not filing suit.").

The Complaint alleges that Defendant lied to Plaintiff about the airbag's dangers. Further, Chrysler stated in the January 12, 2009, letter that airbags do not contain chemicals. Compl. at 2, 9. Defendant also withheld the MSDS until 2016. Pl.'s Resp. at 1.

These alleged actions and statements by Defendant, coupled with Plaintiff's assertion that she did not know about the harmful chemicals in the airbag until 2016, support a preliminary conclusion that Defendant intentionally misled Plaintiff and/or Plaintiff reasonably relied on Defendant's misrepresentations. See Singletary v. Cont'l Ill. Nat. Bank and Trust Co. of Chi., 9 F.3d 1236, 1241 (7th Cir. 1993) (merely refusing to cooperate in making the plaintiff's case does not equitably toll the statute of limitations, but concealment of evidence which the plaintiff needed in order to

determine that he had a claim may give rise to an extension).  The Complaint alleges sufficient facts at this stage in the proceedings to equitably estop Defendant from asserting a statute of limitations defense.

    4. <u>The continuing tort rule does not apply.</u>

Illinois's continuing tort rule holds that when "a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." <u>Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.</u>, 770 N.E.2d 177, 190 (Ill. 2002).  A tort is not continuing simply because Plaintiff suffers ongoing or subsequent injury.  <u>Feltmeier v. Feltmeier</u>, 798 N.E.2d 75, 85 (Ill. 2003) ("[W]here there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury.").  The single overt act here is Defendant's production and sale of a chemical-containing airbag, even if the injuries that Plaintiff suffered may have continued or worsened from 2009 to 2016.  <u>See</u> <u>Bridewell v. Eberle</u>, 730 F.3d 672, 678 (7th Cir. 2013) ("The idea that failing to reverse the ongoing effects of a

tort restarts the period of limitations has no support in Illinois law.").

    5.  <u>Plaintiff has not established that she was under a legal disability at the time this cause of action accrued.</u>

Finally, the Illinois statute of limitations is tolled when a person with a personal injury claim is under a legal disability at the time the cause of action is accrued. Such a person may bring her claim within two years after the disability is removed. 735 ILCS § 5/13-211 ("If the person entitled to bring an action, specified in Sections 13-201 through 13-210 of this Code, at the time the cause of action is accrued, . . . is under a legal disability, then he or she may bring the action within 2 years after . . . the disability is removed."). Personal injury claims in Illinois, such as the claim in this case, are governed by Section 13-202. <u>See</u> 735 ILCS 5/13-202.

A person suffers from a legal disability where she is "entirely without understanding or capacity to make or communicate decisions regarding [her] person" and unable to manage her estate or financial affairs. <u>Basham v. Hunt</u>, 773 N.E.2d 1213, 1223 (Ill. App. Ct. 2002). A person is not legally disabled if "she can comprehend the nature of the injury and its implications." <u>Id.</u> at

1221.

Plaintiff has not asserted that she has any such disability. By filing the Complaint and the attached exhibits, her response to Defendant's Motion to Dismiss or Transfer, and various other documents, Plaintiff has demonstrated that, at least as of the filing of this lawsuit, she understands the nature of her injuries and is capable of making decisions about her person. The legal disability exception to the running of the statute of limitations does not apply.

## IV.  MOTION TO TRANSFER VENUE

Defendant alternatively requests this Court to transfer this matter to the United States District Court for the Southern District of New York for referral to the Bankruptcy Court in that district.

Venue is proper in this district because a substantial part of the events giving rise to the claim occurred in this judicial district. 28 U.S.C. § 1391(b)(2). The collision giving rise to this action took place at the intersection of South Grand Avenue and 5th Street in Springfield, Illinois. Compl. at 5.

### A.  BANKRUPTCY CASE BACKGROUND

The vehicle at issue in this case was designed and manufactured by Chrysler Corporation, predecessor to Chrysler

LLC.  On April 30, 2009, Chrysler LLC filed for bankruptcy protection in the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court").  In re Old Carco LLC (f/k/a Chrysler LLC), No. 09–50002, (Bankr. S.D.N.Y.).  Thereafter, Chrysler LLC entered into a proposed purchase agreement called the Master Transaction Agreement (MTA) with Chrysler Group LLC—a new company later known as FCA US LLC (Defendant).  The MTA provided that Chrysler LLC would sell substantially all of its operating assets to Chrysler Group.  Under the MTA, Chrysler Group assumed certain liabilities from Chrysler LLC.  On June 1, 2009, the Bankruptcy Court issued a Sale Order approving the MTA.  The transaction closed on June 10, 2009, and the bankruptcy plan was confirmed on April 23, 2010.  The bankruptcy case was closed on March 2, 2016, but the case was reopened several times for limited purposes.  Id.

In making the purchase, Chrysler Group did not assume liability for any claims that arose before the Closing Date except for those liabilities expressly described in the order. Sale Order ¶ 35. With respect to product liability claims like Plaintiff's, Chrysler Group assumed liability for claims arising from the sale of motor

vehicles before the June 10, 2009 Closing Date "solely to the extent that" such claims "(A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) do not include any claim for exemplary or punitive damages." MTA § 2.08(h) as amended by Amend. No. 4 (Oct. 29, 2009). The Bankruptcy Court expressly retained jurisdiction to "interpret, implement, and enforce the terms and provisions of this Sale Order including . . . "to protect [Chrysler Group] against any Claims . . . ." Sale Order ¶ 59.

Defendant asserts that Plaintiff's claims for compensatory and punitive damages seek to impose liability on Defendant that is prohibited by the Sale Order because the statute of limitations has run and Defendant did not assume liability for punitive damages claims. The Court also notes, but Defendant does not argue, that Plaintiff's action does not fall within the MTA's restrictions on liability for accidents that occurred before the Closing Date: this action arises from a motor vehicle accident on January 1, 2009, five months before the June 10, 2009 Closing Date. See MTA § 2.08(h)

as amended by Amend. No. 4 (Oct. 29, 2009).

## B. LEGAL STANDARD

A district court may transfer a bankruptcy case or proceeding to another district court in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; Mello v. Hare, Wynn, Newell & Newton, No. 3:12–CV–404, 2012 WL 2601945, at * 4 (M.D. Tenn. July 5, 2012) (noting that these two standards are "disjunctive and separate, and transfer is appropriate even if only one is met").

The party moving for a transfer has the burden to show by a preponderance of the evidence that transfer is warranted. Quick v. Viziqor Solutions, Inc., No. 4:06CV637, 2007 WL 494924, at *3 (E.D. Mo. Feb. 12, 2007). Deciding whether transfer under § 1412 is warranted requires a case specific analysis based on the totality of the circumstances. Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.), 896 F.2d 1384, 1391 (2d Cir. 1990) (the interest of justice standard is a "broad and flexible standard which must be applied on a case-by-case basis").

## C. ANALYSIS

1. <u>Eligibility for Transfer Under § 1412</u>

This case is eligible for transfer under § 1412 because it is a bankruptcy "case or proceeding." Under 28 U.S.C. § 1334, district courts have subject-matter jurisdiction over bankruptcy proceedings "under title 11" and proceedings "arising under title 11" (known as "core" proceedings) and proceedings "arising in or related to cases under title 11" (known as "related-to" proceedings). <u>Quesenberry v. Chrysler Group LLC</u>, No. 12-48-ART, 2012 WL 3109431, at *3 (E.D. Ky. July 31, 2012); <u>see also</u> <u>Stern v. Marshall</u>, 131 S. Ct. 2594, 2605 (2011).

There is a split in authority regarding whether § 1412 allows for the transfer of an action that is "related to" a bankruptcy action in another forum. <u>See</u> <u>City of Liberal v. Trainmobile Corp.</u>, 316 B.R. 358, 362 (D. Kan. 2004) (collecting eleven cases holding that § 1412 governs the transfer of both core and related-to proceedings and ten cases holding that § 1412 governs the transfer of just core proceedings).

Defendant contends that Plaintiff's claims relate directly to the Bankruptcy Court's orders and opinions. This case is a proceeding that is eligible for transfer under § 1412 because the outcome of the

action could affect the administration of the estate.  See Creekridge Capital, LLC v. Louisiana Hosp. Center, LLC, 410 B.R. 623, 627 (D. Minn. 2009) (granting transfer to bankruptcy court of equipment lessor's claims against guarantors of bankrupt lessee because action was "related to" bankruptcy proceedings because the outcome of the action "could conceivably have any effect on the estate being administered in the bankruptcy" such as if "the outcome could alter the debtor's rights, liabilities, options, or freedom of action and which in any way impacts upon the handling and administration of the bankrupt estate.") (internal quotation marks omitted); Baker v. Muscletech Research & Dev., Inc., No. 06–C–492, 2006 WL 1663748, at *1–2 (E.D. Wis. June 9, 2006) (§ 1412 allowed for the transfer of related-to proceedings).

2. Transfer is in the Interest of Justice.

Because the balance of considerations overwhelmingly favor the Bankruptcy Court as the proper venue for interpreting and enforcing the Sale Order, the Court will transfer this case.

In deciding whether transfer of a "related-to action" under § 1412 would be in the interest of justice, courts consider factors such as (1) the economical and efficient administration of the

bankruptcy estate, (2) the presumption in favor of the forum where the bankruptcy case is pending, (3) judicial efficiency; (4) the ability to receive a fair trial, (5) the state's interest in having local controversies decided within its borders by those familiar with its laws, (6) the enforceability of any judgment rendered, and (7) the plaintiff's original choice of forum. <u>Creekridge Capital</u>, 410 B.R. at 629.

Courts often find that the most important consideration when weighing the interest of justice is whether the transfer would "promote the economic and efficient administration of the estate." <u>In re Commonwealth Oil Refining Co.</u>, 596 F.2d 1239, 1247 (5th Cir. 1979). Claims that challenge the limitations of liability pursuant to a Sale Order—such as the Plaintiff's—threaten to affect the bankruptcy estate by altering the estate's obligations to the purchaser. A streamlined interpretation of the Sale Order prevents inconsistent interpretations that could unravel the Sale Order's "critical inducement" of "transferring assets [to the purchaser] free and clear of existing tort liability." <u>In re Chrysler LLC</u>, 576 F.3d 108, 126 (2d Cir. 2010), vacated on other grounds by <u>In re Chrysler LLC</u>, 592 F.3d 370 (2d Cir. 2010).

Transfer of this action would promote the efficient administration of the bankruptcy estate. Issues raised in the present action require interpretation and application of the Sale Order. Cooper v. Daimler AG, No. 1:09-CV-2507, 2009 WL 4730306, at *4 (N.D. Ga. Dec. 3, 2009). The Bankruptcy Court has already ruled on whether Chrysler Group assumed various liabilities for tortious conduct. See Opinion Granting Debtors' Motion Seeking Authority to Sell, Pursuant to 11 U.S.C. § 363, Substantially All of the Debtors' Assets, In re Old Carco LLC (f/k/a Chrysler LLC), No. 09–50002, (Bankr. S.D.N.Y. May 31, 2009) [Docket No. 3073]; see Cooper, 2009 WL 4730306 (granting transfer to bankruptcy court of negligent design case against Chrysler because transfer supported efficient administration of the Sale Order, the bankruptcy court already ruled on similar issues and had retained jurisdiction, issues required interpretation and application of Sale Order, and similar issues were likely to be raised in other proceedings). Further, issues like those raised by the present action are likely to be raised in other proceedings. These matters can be more efficiently addressed by a single court to ensure a consistent interpretation.

Further, the Bankruptcy Court is the proper forum for resolution of these issues. A bankruptcy court's interpretation of its own order is "entitled to substantial deference" because of its special expertise in the order's intended meaning and its greater familiarity with the underlying bankruptcy case. See Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195, 2204 n.4 (2009). Here, the Bankruptcy Court specifically retained jurisdiction to interpret and enforce the Sale Order, including protecting Chrysler Group from any claims made against it. Sale Order ¶ 59. Further, the Bankruptcy Court did not limit its retained jurisdiction to protect the Sale Order to the period while the bankruptcy action was pending. Sale Order ¶ 59; compare Sale Order ¶ 43. Transfer will insure that the Sale Order is interpreted and applied as the Bankruptcy Court intended.

Several factors weigh against transfer. Most significant is the deference generally accorded to the plaintiff's original choice of forum. See In re Bruno's Inc., 227 B.R. 311, 324–25 (N.D. Ala. 1998); cf. Manley v. Engram, 755 F.2d 1463, 1468 (11th Cir. 1985) ("[V]enue is merely a privilege of the parties."). However, in the interest of justice analysis, the interest of the bankruptcy estate, as

opposed to the litigant's interest, is paramount.  KFC Corp. v. Wagstaff, 502 B.R. 484, 499 (W.D. Ky. 2013).

Also weighing against transfer is a state's interest in having local controversies decided within its borders by those familiar with its laws.  Illinois has an interest in deciding this litigation because the suit involves an Illinois plaintiff and a vehicle accident that took place in Illinois.  See Creekridge Capital, 410 B.R. at 631.

The Court also recognizes the consideration to be given to a plaintiff's choice of forum as well as the convenience afforded to the parties by litigating an action in the state in which the incident occurred.  Plaintiff states that transfer to the Southern District of New York would be inconvenient for her, given that she lives, works, and receives medical treatment in Illinois.  Pl.'s Resp. at 1. Nonetheless, transfer to the Bankruptcy Court to address threshold issues regarding the viability of Plaintiffs' claims will not overly burden Plaintiff.  Transfer does not preclude this case from ultimately being tried in the Central District of Illinois—should these claims go to trial, the District Court for the Southern District of New York will determine whether the claims shall be tried in the Southern District of New York or in this Court.  28 U.S.C. §

157(b)(5).

The Court finds that the interests of Plaintiff and the State are outweighed by the substantial efficiencies gained by permitting the Bankruptcy Court to resolve threshold issues of liability. Transfer of this case to the Southern District of New York for referral to the Bankruptcy Court is in the interest of justice because the Bankruptcy Court is in the best position to interpret its Sale Order and to determine whether Defendant assumed liability for Plaintiff's claims. Defendant's motion to transfer is therefore GRANTED.

## V. CONCLUSION

For the foregoing reasons, it is hereby ordered that Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) or, Alternatively, to Transfer Venue Pursuant to 28 U.S.C. § 1412 (d/e 12) is GRANTED IN PART and DENIED IN PART. Defendant's Motion to Dismiss is DENIED. Defendant's Motion to Transfer Venue is GRANTED. The Court orders this action transferred to the United States District Court for the Southern District of New York for referral to the Bankruptcy Court for that district. This case is CLOSED, and all pending motions are terminated.

**ENTERED: September 14, 2017**

FOR THE COURT:                          s/ Sue E. Myerscough
                                        SUE E. MYERSCOUGH
                              UNITED STATES DISTRICT JUDGE